

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-3-2005

# Gary v. Air Grp Inc

Precedential or Non-Precedential: Precedential

Docket No. 02-3534

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Gary v. Air Grp Inc" (2005). *2005 Decisions.* Paper 1515.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1515

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-3534

_____

RAY GARY

                Appellant

v.

THE AIR GROUP, INC.

_____

On Appeal from the United States District Court
for the District of New Jersey
Civil Action No. 02-2589
District Judge: Honorable Katherine S. Hayden

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 16, 2004

_____

Before: NYGAARD and GARTH, <u>Circuit Judges</u>, and

POLLAK[*], <u>District Judge</u>

(Opinion Filed: February 3, 2005)

_____

OPINION

_____

Mark A. Berman
Michael A. Baldassare
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, New Jersey 07102

  *Attorney for Appellant,*
  *Ray Gary*

Todd H. Girshon
Jackson Lewis LLP
59 Maiden Lane
New York, New York 10038

  *Attorney for Appellee,*
  *The Air Group, Inc.*

---

[*] The Honorable Louis H. Pollak, Senior District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Garth, <u>Circuit</u> <u>Judge</u>:

Appellant Ray Gary ("Gary"), a New Jersey resident, brought an action against Appellee The Air Group, Inc. ("The Air Group"), a California corporation, alleging a violation of New Jersey's Conscientious Employee Protection Act, N.J.S.A. § 34:19-1 *et seq.* ("CEPA"). The District Court, holding that Gary's state law whistleblower claim was preempted by the federal Airline Deregulation Act, 49 U.S.C. § 41713 ("ADA"), as amended by the Whistleblower Protection Program, 49 U.S.C. § 42121 ("WPP"), dismissed Gary's action pursuant to Federal Rule of Civil Procedure 12(b)(6). After considering Gary's appeal, we will reverse.

I.

The facts of this case are largely undisputed. From March 15, 2001 through August 30, 3001, Ray Gary was employed by The Air Group as a co-pilot for the "Cessna

1

Citation," a small private aircraft. In July 2001, The Air Group hired James O'Neal Johnson, Jr. as pilot-in-command for the Cessna Citation.

Gary spent four days assisting Johnson with preparations for a Federal Aviation Administration ("FAA") required "route check." After spending that time with Johnson, Gary alleges that he believed Johnson was unqualified to pilot an aircraft because he: (1) did not have the requisite jet time mandated by the FAA, (2) was unfamiliar with FAA mandated basic flight procedures, (3) did not properly proceed with the FAA mandated "Pre-Flight Checklist," a safety measure, (4) was unfamiliar with the airspace into which he was planning to fly, and (5) was unfamiliar with how to obtain departure clearance at certain airports.

Based on the foregoing, Gary alleges that he reasonably believed that if The Air Group permitted Johnson to fly and/or

if he did so, Johnson would be endangering himself, passengers, crew, the public and the aircraft. Gary also alleges he believed Johnson had violated and/or would violate FAA regulations.

On August 30, 2001, Gary called his supervisor, Dennis Turville, to express his concerns. Gary told Turville that Johnson was "ill-prepared, lacked ability, lacked the proper credentials, lacked the required experience, was unsafe and unqualified to pilot a commercial charter plane." A few hours later, The Air Group terminated Gary. Gary alleges that The Air Group fired him in retaliation for, among other things, his report of Johnson's lack of qualifications as well as Johnson's past and potential future FAA violations.

On April 29, 2002, Gary filed a complaint in the Superior Court of New Jersey alleging that his termination was in violation of New Jersey's Conscientious Employee

3

Protection Act ("CEPA"), a state whistleblower statute.[1]

On May 29, 2002, The Air Group removed the case to the District of New Jersey pursuant to 28 U.S.C. § 1441. It then

---

[1] That provision states, in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care

N.J.S.A. 34:19-3.

4

moved to dismiss Gary's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that his state law whistleblower claim was preempted by federal law, specifically the ADA, 49 U.S.C. § 41713, as amended by the WPP, 49 U.S.C. § 42121.

The District Court granted The Air Group's motion to dismiss on August 8, 2002. This timely appeal followed.[2]

## II.

The District Court had jurisdiction over Gary's state law action pursuant to 28 U.S.C. §§ 1331 and 1332. We have jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's dismissal of a complaint under Federal Rule of Civil Procedure

---

[2] Gary initially brought his appeal *pro se.* On November 10, 2003, based on a finding that the "issues are arguable and complex," this Court appointed *pro bono* counsel for Gary.

12(b)(6). *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998). In reviewing this appeal, we apply the same test as the District Court, accepting all of Gary's allegations as true and construing all reasonable inferences in his favor. *See Port Authority of N.Y. & N.J. v. Arcadian Corp. et al.*, 189 F.3d 305, 312 (3d Cir. 1999).

III.

Congress enacted the ADA in 1978 to "prevent the states from re-regulating airline operations so that competitive market forces could function." *Taj Mahal Travel*, 164 F.3d at 194 (citation omitted). The ADA was intended to increase competition among air carriers. In addition, it contains an express preemption clause, which provides in relevant part that:

> [A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier

6

that may provide air transportation
under this subpart.

49 U.S.C. § 41713(b)(1).

The Supreme Court has given a broad interpretation to the words "relating to," holding that "[s]tate enforcement actions having a connection with, or reference to airline 'rates, routes, or services' are pre-empted." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992). The requisite connection exists either where "the law expressly references the air carrier's prices, routes or services, or has a forbidden significant effect upon the same." *United Parcel Serv., Inc. v. Flores-Galarza*, 318 F.3d 323, 335 (1ˢᵗ Cir. 2003) (citation omitted). At the same time, however, the Supreme Court has indicated that there are "real limitations to the [ADA's] preemptive scope, stating . . . '[s]ome state actions may affect [airline fares] in too tenuous, remote or peripheral a manner to

7

have preemptive effect.'" *Taj Mahal Travel*, 164 F.3d at 191 (quoting *Morales*, 504 U.S. at 390) (internal quotation marks omitted).

In the present appeal no claim is made that the ADA elements of "price" or "route" are involved. The dispute centers around whether Gary's state law retaliation claim has a "forbidden significant effect" upon The Air Group's "service." In other words, whether Gary's claim for retaliatory discharge under New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-1 *et seq.*, is "related to" the "service of an air carrier." 49 U.S.C. § 41713(b)(1). Neither the Supreme Court nor our sister circuits have defined the term "service of an air carrier" in the context of an employee calling the attention of his employer to the safety qualifications of a co-worker.

In 2000, Congress enacted the Whistleblower Protection Program as an amendment to the ADA. That statute, which is

the federal airline analog to the New Jersey whistleblower statute, provides in relevant part:

> No air carrier . . . may discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee . . . provided . . . to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States.

49 U.S.C. § 42121(a)(1).

We must therefore determine whether the ADA, as amended by the WPP, preempts Gary's claim under the New Jersey whistleblower statute. To do so requires us to answer two related questions. First, is Gary's claim "related to a . . .

9

service of an air carrier" within the express terms of the ADA preemption provision? Second, does the WPP alter the scope of the ADA preemption provision such that Gary's claim now falls within its ambit?

In the post-WPP era, the Eighth and Eleventh Circuits have both weighed in on the viability of state law whistleblower claims in the aviation context. *See Branche v. Airtran Airways, Inc.*, 342 F.3d 1248 (11th Cir. 2003)[3]; *Botz v. Omni Air Int'l*, 286 F.3d 488 (8th Cir. 2002). As these cases provide the framework for the parties' arguments on appeal, they are discussed in detail below.

---

[3] *Branche v. Airtran Airways, Inc.* was filed by the Eleventh Circuit on August 21, 2003. The District Court, which granted The Air Group's motion to dismiss Gary's claim, did so on August 8, 2002 – a year before *Branche* was filed. We recognize that the District Court did not have the benefit of the Eleventh Circuit's *Branche* opinion when it decided The Air Group's motion.

*1.*      *Botz v. Omni Air International*

Omni Air International, Inc. terminated Anna Botz's employment as a flight attendant after she refused a flight assignment that she believed violated federal safety regulations.[4]   Botz then filed suit alleging Omni violated Minnesota's whistleblower statute[5] by discharging her in retaliation for refusing the assignment and for reporting the alleged safety violation to Omni.  Omni moved to dismiss the action pursuant to Rule 12(b)(6) on the ground that the state whistleblower provisions were both expressly and impliedly

---

[4] Omni assigned Botz to work both legs of a round-trip flight from Alaska to Japan.  Botz believed this assignment would require her to violate a Federal Aviation Regulation limiting a flight attendant's "duty period" to no longer than twenty hours.  *See* 14 C.F.R. § 121.467.

[5] The New Jersey statute, N.J.S.A. § 34:19-1 *et seq.*, contains the identical "refusal" provision at issue in *Botz*. However, that provision is not implicated in the present appeal.

11

preempted by the ADA and WPP. The district court granted the motion and the Eighth Circuit Court of Appeals affirmed.

On appeal, the court focused on the fact that Botz, a flight attendant, refused to fly as assigned: "When applied to the facts surrounding Botz's discharge, the Minnesota whistleblower statute has a forbidden connection with air-carrier services. It includes broad authorization to flight attendants to refuse assignments, jeopardizing an air carrier's ability to complete its scheduled flights." *Botz,* 286 F.3d at 494. The court held that Botz's claim was expressly preempted by the ADA based on its conclusion that "[t]he Minnesota whistleblower statute affects air-carrier service by authorizing a flight attendant to refuse assignments and protecting her when she does." *Id*. at 495.

The Eighth Circuit then turned to the impact of the WPP on ADA preemption. It found that "[t]he fact that the WPP

12

now provides a comprehensive scheme for protecting the precise sort of air safety-related conduct Botz engaged in here, is . . . powerful evidence of Congress's clear and manifest intent to pre-empt state-law whistleblower claims related to air safety." *Id*. at 496. Thus, it concluded that "[w]hile the plain language of the ADA's pre-emption provision encompasses Botz's claims, the WPP makes it unmistakable that such claims are pre-empted." *Id*. at 498.

2.    *Branche v. Airtran Airways, Inc.*

Branche was employed as an aircraft inspector for Airtran. He was required to conduct safety inspections of aircraft prior to takeoff. Branche alleged that he was terminated after he reported several alleged safety violations to the FAA. In particular, Branche alleged that on one occasion an Airtran plane landed with one of its engines running at a temperature that exceeded FAA safety guidelines. Branche recommended

13

to Airtran's maintenance supervisor that the engine be subjected to a detailed inspection but he was overruled and the plane subsequently took off.

Branche brought suit under Florida's Whistleblower Act. After discovery, Airtran moved for summary judgment arguing that Branche's state law claim was expressly preempted by the ADA. The District Court granted the motion but the Court of Appeals reversed.

On appeal, the Eleventh Circuit noted that "employment discrimination actions typically have been held to fall outside the scope of the ADA's pre-emption clause." *Branche*, 342 F.3d at 1259 (citations omitted). It concluded that "given the particularities of Branche's claim that he was discharged for his *post hoc* reporting of Airtran's safety violations, we believe that this case is more analogous to the majority of those [employment discrimination claims]." *Id.* at 1260. Notably, the

14

court did not "dispute the Eighth Circuit's conclusion that the grounding of an airplane is related to services." *Id.* at 1262. Rather, it found "in this case, the connection – or, indeed, the potential connection – between Branche's actions and air carrier services is far more attenuated than in *Botz.*" *Id.*

Turning to the impact of the WPP, the Eleventh Circuit disagreed with the expansive effect given to that provision by the Eighth Circuit. The *Branche* court emphasized the fact that the WPP "says nothing about preemption" and found that silence "ambiguous" as to Congressional intent regarding preemption of state law whistleblower claims. *Id.* at 1263. It thus concluded that "the WPP changed neither the nature of Florida's Whistleblower Act nor the language of the ADA's pre-emption provision in any meaningful way." *Id.* at 1264. Rather, "[i]n deciding pre-emption, whether before or after the . . . WPP, the question we must answer remains the same: Is the

15

state law in question 'related to' air carrier 'services'?" *Id.* Because Branche's claim was not, it was not preempted by the ADA.

Here, as we have noted, *see* note 3 *supra*, the District Court dismissed Gary's case prior to the filing of the Eleventh Circuit's decision in *Branche* and thus did not have the benefit of that court's analysis. Instead, the District Court, adopting the reasoning of the Eighth Circuit in *Botz,* determined that the ADA's express preemption provision was significantly expanded by the WPP amendment and as such held that Gary's state law claim was preempted.

IV.

On appeal, Gary urges the Court to follow *Branche* and hold that the ADA does not preempt his state law claim because his claim is not "related to" The Air Group's

16

"service."[6]  He further contends that the Court should adopt

the Eleventh Circuit's analysis that the addition of the WPP

did not expand the scope of the ADA's preemption provision.

## 1. *Express Preemption*

We hold Gary's claim is not expressly preempted by

the ADA because its connection to The Air Group's "service

of an air carrier", actual or potential, is simply too remote and

too attenuated to fall within the scope of the ADA, 49 U.S.C.

§ 41713(b)(1).  Gary's claim is predicated on a complaint to

his supervisors about Johnson's qualifications and his

---

[6]  However the "service" component of the ADA is interpreted, *see*, *e.g.*, *Taj Mahal Travel*, 164 F.3d at 194 ("[W]e do not find it conceptually helpful to distinguish 'operation or maintenance of aircraft' from 'service.'"); *Branche,* 342 F.3d at 1256-58, Gary's complaint and the actions allegedly taken by him cannot be deemed to be related to the "service of an air carrier."  This is particularly so in light of the ADA's primarily economic focus.  *See Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 368 (3d Cir. 1999) (describing the ADA as an "economic deregulation statute").

17

"reasonabl[e] belie[f] that Mr. Johnson would violate and/or had violated Federal Aviation Administration Regulations." Compl. at ¶ 6. Unlike Botz, Gary never refused a work assignment, and thus his report to The Air Group about Johnson did not have the potential to interrupt service by grounding a particular flight.

Indeed, the relation of Gary's whistleblower report to "service" is even more attenuated than Branche's reports. Gary's actions did not interrupt any scheduled flights, nor did they have the potential to ground any scheduled flights, for the simple reason that no flights were scheduled. Instead, Gary's actions are more properly viewed as comparable to a garden variety employment claim, albeit in the present context, one that is related to safety.

2.      *Impact of the WPP on ADA Preemption*

The Air Group's principal argument on appeal, and the

18

basis upon which the District Court rendered its decision, is that the addition of the WPP expanded the scope of the ADA preemption provision to encompass state law whistleblower claims. The *Botz* court analyzed the WPP to that effect. Botz herself argued that the WPP "was not intended to pre-empt State whistleblower protections because, if it had been, Congress could easily have made such preemption express by including language in the WPP indicating that it was a whistleblowing air-carrier employee's exclusive remedy." *Botz*, 286 F.3d at 497. The *Botz* court rejected this argument, claiming that "[t]his turns proper logic on its head." *Id*. It held that while the plain language of the ADA's preemption provision encompassed Botz's claims, the WPP "made it unmistakable that such claims are preempted." *Id*. at 498.

While *Botz* sets forth its interpretation of the WPP, we find the better view is that expressed by the Eleventh Circuit

in *Branche* – the WPP did not alter the ADA analysis in any meaningful way. Two factors support this conclusion.

First, the plain language of the WPP is wholly silent on the issue of preemption. In enacting the WPP, Congress presumably was aware of the view of a majority of courts that the ADA did not preempt state law retaliatory discharge claims. *See Branche*, 342 F.3d at 1262. Thus, we agree with the Eleventh Circuit's conclusion that Congress' silence renders its intent "ambiguous" at best and thus should not serve as a basis for expanding ADA preemption. *See id*.

Second, our holding is reinforced by the well-established principle that "courts should not lightly infer pre-emption." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491 (1987). This is particularly apt in the employment law context which falls "squarely within the traditional police powers of the states, and as such should not be disturbed

20

lightly." *Branche*, 342 F.3d at 1259 (citation omitted).

We therefore agree with the Eleventh Circuit that *Botz* went too far in expanding ADA preemption. Instead, the operative question remains whether the state law claim is related to airline prices, routes, or services. Because, as we earlier acknowledged, the elements of airline prices and routes are not in issue on this appeal, we hold that Gary's state law whistleblower claim is not "related to" the "service of an air carrier" within the meaning of 49 U.S.C. § 41713(b)(1). Hence, Gary's retaliation claim is not preempted by the ADA as amended by the WPP.

The order of the District Court will be reversed and the matter remanded for further proceedings consistent with this opinion.[7]

---

[7] The Air Group makes the additional argument that Gary's state law claim is impliedly preempted under the

doctrines of field and conflict preemption. We decline to find his claim so preempted.

In general, the existence of an express preemption provision supports the inference that there is no implied preemption. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 289 (1995); *Horn v. Thoratec Corp.*, 376 F.3d 163, 166 (3d Cir. 2004).

With respect to conflict preemption, the Supreme Court has left open the possibility that a federal law could provide for both express and conflict preemption. *See Freightliner*, 514 U.S. at 289. However, courts of appeals in general have been extremely reluctant to infer conflict preemption in the face of an express preemption provision. *See, e.g., Horn*, 376 F.3d at 166. The Air Group argues that CEPA should be preempted because it serves as an obstacle to employees' reporting safety violations to the FAA. That argument is flawed, however, because CEPA and the WPP are not reporting statutes but are rather parallel remedial statutes designed to protect airline employees who are fired in retaliation for whistleblowing activities. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 496-97 (1996) (no conflict preemption in the case of parallel state and federal statutory remedies for the same conduct and harm).