**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARTIN VENTRESS,
                    *Plaintiff-Appellant,*

v.

JAPAN AIRLINES; JALWAYS CO.,
LTD.; HAWAII AVIATION CONTRACT
SERVICES, INC.,
                    *Defendants-Appellees.*

No. 08-15731

D.C. No.
1:07-CV-00581-
SPK/LEK

MARTIN VENTRESS,
                    *Plaintiff-Appellant,*

v.

JAPAN AIRLINES; JALWAYS CO.,
LTD.; HAWAII AVIATION CONTRACT
SERVICES, INC.,
                    *Defendants-Appellees.*

No. 08-16122

D.C. No.
1:07-cv-00581-SPK-
LEK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Samuel P. King, District Judge, Presiding

Submitted November 25, 2009*
San Francisco, California

Filed April 30, 2010

Before: Alfred T. Goodwin, Robert R. Beezer and
Richard C. Tallman, Circuit Judges.

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Opinion by Judge Goodwin

**COUNSEL**

Martin Ventress, Pro se, Houston, Texas, for the plaintiff-appellant.

Andrew L. Pepper, Carlsmith Ball, Honolulu, Hawaii, for defendants-appellees Japan Airlines and Jalways, Co.; Carl Osaki, Honolulu, Hawaii, for defendant-appellee Hawaii Aviation Contract Services.

---

**OPINION**

GOODWIN, Senior Circuit Judge:

This pro se appeal tenders the only legal questions that remain in flight engineer Martin Ventress's dispute with Japan Airlines and its subsidiary Jalways Co., Ltd. (collectively, "JAL") and Hawaii Aviation Contract Services, Inc. ("HACS") following the remand to the District of Hawaii in his first appeal to this court. *See Ventress v. Japan Airlines*, 486 F.3d 1111 (9th Cir. 2007) (*Ventress I*).

In *Ventress I*, we held that the Friendship, Commerce, and Navigation Treaty, U.S.-Japan, April 2, 1953, 4 U.S.T. 2063, does not preempt California's whistle blower protection laws, and remanded the state-law claims to the District of Hawaii for further proceedings. *Ventress I*, 486 F.3d at 1118. We also affirmed venue in Hawaii, dismissed Ventress's interlocutory appeal of an order compelling arbitration of his claims against HACS, and disposed of other then-pending matters that are no longer in controversy. *Id.* at 1119.

In August 2007, Ventress and HACS concluded arbitration, resulting in an award that denied Ventress's claim for wrongful termination and ordered him to pay costs to HACS. On March 20, 2008, the district court denied Ventress's motion

to vacate the award and granted HACS's motion to confirm it. Meanwhile, the district court issued an order on November 28, 2007, denying Ventress's motion to amend the complaint to state claims under Hawaii and federal law.

The district court severed Ventress's case from that of pilot Jack Crawford and severed HACS as a defendant. On March 14, 2008, the court denied Ventress's motion to transfer venue back to the Central District of California, holding that the doctrine of the law of the case prevented it from reconsidering an issue decided and affirmed on appeal by this court.

JAL moved for judgment on the pleadings, asserting complete federal preemption by the Federal Airline Deregulation Act of 1978, 49 U.S.C. § 41713 ("ADA"), as amended by the Whistleblower Protection Program, 49 U.S.C. § 42121 ("WPP"). The district court granted that motion. The court held that the ADA, as amended by the WPP, barred Ventress's state-law whistle blowing and public policy claims. Noting that this circuit had yet to address ADA preemption of state whistle blower protection laws, the district court adopted the Eighth Circuit's reasoning that "the WPP makes it unmistakable that such claims are pre-empted." *Botz v. Omni Air Int'l*, 286 F.3d 488, 498 (8th Cir. 2002).

Ventress now appeals the judgments in favor of both HACS and JAL. His appeal raises four questions: whether the district court (1) erred in granting HACS's motion to confirm and denying Ventress's motion to vacate the arbitration award, (2) abused its discretion in dismissing Ventress's motion for transfer of venue, (3) abused its discretion in denying Ventress's motion to amend the complaint, and (4) erred in dismissing Ventress's claims against JAL based on complete federal preemption.

## A. Arbitration Award

Ventress contends that the district court erred in granting HACS's motion to confirm and denying Ventress's motion to

vacate the arbitration award because the arbitrator was biased against him and failed to follow the law. On de novo review, *Coutee v. Barrington Capital Group, L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003), we affirm.

**[1]** The Hawaii Supreme Court has noted that "[b]ecause of the legislative policy to encourage arbitration and thereby discourage litigation, judicial review of an arbitration award is confined to 'the strictest possible limits.' " *Gadd v. Kelley*, 667 P.2d 251, 258 (Haw. 1983) (quoting *Mars Constructors, Inc. v. Tropical Enters, Ltd.*, 460 P.2d 317, 319 (Haw. 1969)). A court may therefore vacate an arbitration award only for the limited reasons specified by statute. *See id.* One such reason is "[e]vident partiality by an arbitrator appointed as a neutral arbitrator." Haw. Rev. Stat. § 658A-23(a)(2)(A). "Evident partiality" may exist where there is actual bias on the part of the arbitrator, or where undisclosed facts demonstrate a reasonable impression of partiality. *See Daiichi Hawai'i Real Estate Corp. v. Lichter*, 82 P.3d 411, 425-26 (Haw. 2003). " 'The burden of proving facts which would establish a reasonable impression of partiality rests squarely on the party challenging the award.' " *Id.* at 425 (quoting *Sheet Metal Workers Int'l Ass'n Local Union 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir. 1985)).

**[2]** Hawaii law also allows a court to vacate an arbitration award if "[a]n arbitrator exceeded the arbitrator's powers." Haw. Rev. Stat. § 658A-23(a)(4). An arbitrator does not exceed the arbitrator's powers by misunderstanding or incorrectly applying the law. *See Tatibouet v. Ellsworth*, 54 P.3d 397, 407 (Haw. 2002). Vacatur may be proper, however, "where the parties provide proof that the arbitrators intentionally and plainly disregarded" the relevant substantive law. *Id.* at 411.

**[3]** Ventress argues that the arbitrator was biased against him because he had previously filed a motion to disqualify the arbitrator and because he is African American. Ventress

claims that the arbitrator is a trustee for the Office of Hawaiian Affairs, which Ventress believes demonstrates an ideology of "rational nationalism;" is a graduate of the Kamehameha School, which offers preference to Native Hawaiian applicants and from which HACS's owner also graduated; and belongs to the Mormon Church, which Ventress claims "had a long-standing reputation of racial bias against blacks." These affiliations, he asserts, establish "evident partiality" by the arbitrator. The district court, however, correctly concluded that Ventress "has offered only bald allegations of partiality without any, much less persuasive, evidence to support these claims."

In the absence of evidence of actual bias, the filing and denial of a motion to disqualify an arbitrator in one arbitration does not establish bias in a subsequent arbitration. Moreover, the arbitrator's supposed affiliations, and Ventress's unsupported assertions about their ideologies, do not establish bias. Nor does the fact that the arbitrator and HACS's owner graduated from the same school, apparently some thirteen years apart, establish bias or a conflict of interest.

**[4]** Ventress also argues that the arbitrator allowed HACS to serve procedurally improper subpoenas, permitted HACS to submit an untimely supplement to its final arbitration argument, and denied Ventress an alleged right to be represented by a non-attorney. As the district court correctly noted, however, even assuming that the arbitrator erred in applying the law, Ventress has not shown that he "intentionally and plainly disregarded" the law. We therefore affirm confirmation of the arbitration award and denial of the motion to vacate it.

## B.  Motion to Transfer Venue

**[5]** Ventress argues that the district court erred in denying his motion to transfer venue from the District of Hawaii to the Central District of California because he thinks racial and residential factors make California a better venue for him. These

are the same arguments that Ventress made in *Ventress I*, where we held that the district court's decision to transfer venue was not an abuse of discretion. 486 F.3d at 1118-19. The district court correctly concluded that it could not reconsider that question. *See City of L.A. Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888-89 (9th Cir. 2001).

## C.   Motion to Amend

Ventress also argues that the district court erred in denying his motion to amend the complaint to substitute Hawaii claims for California claims and add a federal claim. We review for abuse of discretion the district court's denial of a motion to amend a complaint. *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 725 (9th Cir. 2000). "A district court acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Id.* at 725-26.

**[6]** We conclude that the district court acted within its discretion. As to the state-law claims, it concluded that, because venue was transferred under 28 U.S.C. § 1404(a), the substantive law of the transferor state—California—applies. *See Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 965 (9th Cir. 1993). It also noted that Ventress and Crawford chose to bring only California state-law claims, argued strenuously that California's interests were paramount, waited nearly a year—until a substantive motion was pending against their complaint—before attempting to amend it, and did not show that the law of the two states was different on the merits. As to the federal claim, the WPP provides no private right of action, *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1023-24 (9th Cir. 2007), and Ventress provided no evidence that he had exhausted the prescribed administrative remedies. We therefore hold that there was no error in the denial of the motion to amend.

## D. *Federal Preemption*

Finally, Ventress contends that the district court erred in granting JAL's motion for judgment on the pleadings on the basis of complete federal preemption. Ventress argues that the ADA, as amended by the WPP, does not preempt his claim under the state whistle blower protection statute, California Labor Code § 1102.5(b),[1] and his state-law claim for wrongful termination in violation of the public policy protecting whistle blowers. Neither party addresses whether the protections announced in the WPP should be categorized as falling within the broader confines of the Federal Aviation Act of 1958 ("FAA"), 49 U.S.C. § 40103, and whether the FAA preempts Ventress's state-law claims. *See Montalvo v. Spirit Airlines*, 508 F.3d 464, 473-74 (9th Cir. 2007) (holding that the FAA and its corresponding regulations impliedly preempt state laws governing airline safety).

"A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999). We review de novo a district court's grant of judgment on the pleadings. *Id.* We conclude that the ADA does not preempt Ventress's state-law claims.

However, because the parties did not raise the issue of FAA preemption before us or before the district court, we do not address that issue. *See Cascade Health Solutions v. Peacehealth*, 515 F.3d 883, 916 n.27 (9th Cir. 2008). As we explain

---

[1]California Labor Code § 1102.5(b) provides:

> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

below, the district court is free to consider that separate question in further proceedings on remand if necessary.

**[7]** Congress enacted the ADA to "further 'efficiency, innovation, and low prices' as well as 'variety [and] quality . . . of air transportation services.' " *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (citation omitted). To prevent states from "undo[ing] federal deregulation with regulation of their own," *id.*, it included a preemption provision, providing that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1).**[2]** In 2000, Congress enacted the WPP as an amendment to the FAA, providing a detailed administrative scheme to protect airline employees from being discharged in retaliation for whistleblowing. *See Williams*, 500 F.3d at 1021. The WPP provides, in relevant part:

> No air carrier . . . may discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee . . . provided . . . to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States.

49 U.S.C. § 42121(a)(1).

---

**[2]**Until 1994, this provision was codified at 49 U.S.C. § 1305(a)(1) and prohibited the enforcement of any state law "related to rates, routes, or services of an air carrier." Because "Congress intended this amendment to be 'without substantive change,' " *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 238 n.1 (1995) (citation omitted), courts refer to the two versions interchangeably.

In determining whether the ADA preempts state-law claims, we "must give effect to [the preemption clause's] plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). In conducting that analysis, "[t]he purpose of Congress is the ultimate touchstone." *Retail Clerks Int'l Assoc., Local 1625, AFL-CIO v. Schermerhorn*, 375 U.S. 96, 103 (1963). Our preemption analysis is also guided by the presumption that "because the States are independent sovereigns in our federal system, . . . Congress does not cavalierly preempt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). This is especially true in the area of employment law, which "falls within the traditional police power of the State." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21 (1987).

[8] Because there is no contention that the activities at issue here relate to a price or route, whether the ADA preempts state whistleblower protection laws depends on whether the actions protected by those laws are "related to a . . . service." The Supreme Court defines "related to" as "having a connection with or reference to" prices, routes, or services, *Morales*, 504 U.S. at 383, but has not defined "service" under the ADA.

[9] Our circuit has adopted a relatively narrow definition, defining "service," for purposes of ADA preemption, as "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998) (en banc); *cf. Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (adopting a broader definition of "service," including "items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself").

[10] Although the question appears in this circuit for its first review, the Eighth, Eleventh, and Third Circuits have

each addressed whether the ADA and WPP preempt state whistle blower protection laws. First, in *Botz v. Omni Air Int'l*, 286 F.3d at 494-95, the Eighth Circuit held that the ADA preempted a former flight attendant's state-law claims because her refusal to accept an assignment could have prevented a scheduled departure and therefore related to "service." In so holding, the *Botz* court distinguished whistle blower claims from employment discrimination claims, noting that the Minnesota statute at issue "granted a flight attendant or other air-carrier employee the right to refuse an assignment that is essential to a carrier's ability to provide its scheduled services." *Id.* at 496. In the court's view, enactment of the WPP "makes it unmistakable that such claims are preempted, because "[t]he fact that the WPP now provides a comprehensive scheme for protecting the precise sort of air safety-related conduct Botz engaged in here is . . . powerful evidence of Congress's clear and manifest intent to pre-empt state-law whistleblower claims related to air safety." *Id.* at 496-98.

In *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1262-63 (11th Cir. 2003), the Eleventh Circuit held that the ADA did not preempt an aircraft inspector's state-law claims because the inspector reported safety violations after completion of scheduled flights and therefore could not have interrupted service. Instead, the claims were more analogous to employment discrimination actions, which the ADA does not preempt. *Id.* at 1259-60. Addressing *Botz*, the *Branche* court did "not dispute the Eight[h] Circuit's conclusion that the grounding of an airplane is related to airline services," but disagreed with its conclusion that enactment of the WPP was probative of Congress's intent to preempt state-law claims. *Id.* at 1262-63. Instead, the court concluded that the WPP's silence on preemption is ambiguous and does not alter "the language of the ADA's pre-emption provision in any meaningful way." *Id.* at 1264.

Finally, in Gary v. The Air Group, Inc., 397 F.3d 183, 189 (3d Cir. 2005), the Third Circuit held that the ADA did not

preempt a former copilot's state-law claims because he reported safety violations before flights were scheduled and therefore could not have interrupted service. Instead, the court concluded, the whistle blowing claim was "more properly viewed as comparable to a garden variety employment claim, albeit in the present context, one that is related to safety." *Id.* Concluding that "*Botz* went too far in expanding ADA preemption," the court adopted the Eleventh Circuit's conclusion that the WPP did not alter ADA preemption in any meaningful way. *Id.* at 190.

**[11]** We agree with the Eleventh and Third Circuit's conclusion that the WPP did not alter ADA preemption and that "the operative question remains whether the state law claim is related to airline prices, routes, or services." *Id.* at 190. We reach this conclusion in part because we are mindful that "preemption should not be lightly inferred" in areas such as employment law that are traditionally within the police powers of the states. *See Fort Hallifax Packing Co., Inc.*, 482 U.S. at 21. We also conclude that the WPP's silence on ADA preemption is ambiguous and does not necessarily imply that Congress intended to expand preemption. Instead, the ADA's express preemption provision supports a reasonable inference against more general preemption by the WPP. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995) (noting that an express preemption provision "supports a reasonable inference . . . that Congress did not intend to pre-empt other matters," although it does not foreclose the possibility).

**[12]** In the present case, Ventress's state-law claim is not "related to" a "service" for purposes of ADA preemption. Ventress reported safety violations six months after they occurred and after completion of the scheduled flights. Although Ventress alleges he told the ill pilot that he would pull himself off future flights if the pilot did not stop flying, he does not allege that he was fired in retaliation for that threat, and the record does not indicate that he grounded or had the potential to ground a flight. Ventress therefore did not

interrupt "service," that is, "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." *Charas*, 160 F.3d at 1261. The judgment on the pleadings on the theory that the ADA preempts whistle blower claims filed pursuant to California law is reversed and remanded. Because the parties did not raise the issue of FAA preemption before this court or the district court, the district court may, if necessary, decide the issue in the first instance on remand.

The judgment in 08-15731 is AFFIRMED and the judgment in 08-16122 is AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

No Party to recover costs in this court.