**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 22, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

KELLY DAY,

    Plaintiff - Appellant,

v.

SKYWEST AIRLINES,

    Defendant - Appellee.

No. 20-4129

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 4:20-CV-00013-DN)**
_____

Bradley J. Stoll of Katzman, Lampert & Stoll, Wayne, Pennsylvania, for Plaintiff–Appellant.

Scott M. Petersen (Tanner J. Bean with him on the brief) of Fabian VanCott, Salt Lake City, Utah, for Defendant–Appellee.
_____

Before **BACHARACH**, **BRISCOE**, and **MURPHY**, Circuit Judges.
_____

**MURPHY**, Circuit Judge.
_____

**I. INTRODUCTION**

Kelly Day appeals the district court's dismissal of the diversity action she filed

against SkyWest Airlines for personal injuries she allegedly sustained when a SkyWest

flight attendant carelessly struck her with a beverage cart. The district court granted

SkyWest's motion to dismiss the action as preempted under the Airline Deregulation Act ("ADA"), which preempts state laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).

We agree with our sister circuits that personal-injury claims arising out of an airline employee's failure to exercise due care are not "related to" a deregulated price, route, or service. Therefore, exercising jurisdiction under 28 U.S.C. § 1291, we reverse the district court's dismissal of Day's action and remand for further proceedings consistent with this opinion.

## II. BACKGROUND

Day alleges she flew as a fare-paying passenger on a SkyWest flight from Oregon to Texas on January 11, 2019. During the flight's beverage service, a SkyWest flight attendant "caused the beverage cart to forcefully strike . . . Day's right shoulder causing her significant injury and damage to her body."

Day filed a two-count diversity complaint in the United States District Court for the District of Utah, alleging claims of negligence and breach of contract.[1] In the negligence count, Day alleged SkyWest and its employees acted negligently in several

---

[1] The complaint alleges that SkyWest is incorporated in Utah, has its principal place of business in Utah, maintains an agent for service of process in Utah, and trains its flight attendants in a Utah training facility. SkyWest has not disputed these allegations or otherwise challenged Day's decision to file this case in the District of Utah.

Although the complaint does not specify the applicable law governing Day's negligence and contract claims, the parties have consistently treated her claims as governed by Utah law, both before the district court and on appeal. Accordingly, we follow the parties' lead in treating Day's claims as Utah common-law claims of negligence and breach of contract.

2

different ways, including "[f]ailing to maintain proper lookout during the beverage service while pushing the beverage cart through the passenger aisle," "[f]ailing to push the beverage cart at a reasonable rate of speed through the passenger aisle so as to avoid striking passengers with the beverage cart and/or minimize the damages resulting from any contact with a passenger," and "[f]ailing to properly announce and warn passengers that the beverage cart would be or was being pushed through the passenger aisle."  In the contract count, Day alleged she sustained personal injuries as a result of SkyWest's breach of its contractual obligations to provide her with "safe carriage and transport from her origination to her destination" and to "exercise professional, careful, and safe conduct and judgment."  Both counts sought damages for the personal injuries Day allegedly sustained as a result of the beverage-cart collision.

SkyWest filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  SkyWest sought dismissal of the negligence claim on the basis of ADA preemption and argued that the contract claim should be dismissed because (1) it was redundant of the negligence claim, and (2) the complaint failed to identify a specific contract or contractual provision that was breached.

In granting SkyWest's motion to dismiss, the district court concluded that the negligence and contract claims were both preempted by the ADA and dismissed the complaint solely on that basis.  The court acknowledged in a footnote that SkyWest had raised other arguments regarding the contract claim, but the court concluded it did not need to address these arguments based on its preemption ruling, although it stated in dicta

that "SkyWest is correct that the factual allegations of Day's Complaint are insufficient to state a claim for breach of contract."

Day appeals the district court's dismissal of her complaint, arguing that her personal-injury claims do not fall within the scope of the ADA's preemptive scope. In response, SkyWest argues the district court correctly dismissed both of Day's claims as expressly preempted by the ADA. SkyWest also asks us to affirm the district court's ruling on alternative grounds. For the reasons set forth below, we conclude the district court erred in ruling that Day's personal-injury claims of negligence and breach-of-contract were preempted by the ADA.[2] We decline to address SkyWest's alternative arguments for dismissal. We therefore reverse and remand this case for further consideration by the district court.

### III.  ANALYSIS

#### A.  Express Preemption under the ADA

We review the district court's preemption ruling de novo. *See Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1096 (10th Cir. 2017). Because SkyWest is "[t]he party claiming preemption," it "bears the burden of showing with specificity that Congress intended to preempt state law." *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 489

---

[2] The parties do not dispute that both of Day's claims may be characterized as personal-injury claims, *cf. Walker v. U.S. Gen., Inc.*, 916 P.2d 903, 905 (Utah 1996) ("Walker filed this personal injury action against General, alleging negligence, breach of contract, and gross negligence."), and each party's preemption arguments address both claims together under this broader "personal injury" category rather than raising separate preemption arguments for each specific claim. We follow the parties' lead in treating both as personal-injury claims to which the same general analysis will apply.

n.4 (10thCir. 1998); *see also Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1143 (10th Cir

2010) ("Because Defendants advocate preemption, they bear the burden of showing that

federal and state law conflict.").

The type of preemption at issue in this appeal, express preemption, applies when

Congress "defines explicitly the extent to which its enactments pre-empt state law."

*Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1129 (10th Cir. 2007) (quotations and

alteration omitted).  To determine whether a state law is expressly preempted by a federal

preemption clause, "[w]e apply ordinary principles of statutory interpretation, looking

initially to the plain language of the federal statute."  *Chamber of Commerce of U.S. v.*

*Edmondson*, 594 F.3d 742, 765 (10th Cir. 2010).

The ADA's preemption provision states in pertinent part that "a State . . . may not

enact or enforce a law, regulation, or other provision having the force and effect of law

related to a price, route, or service of an air carrier that may provide air transportation

under this subpart."  49 U.S.C. § 41713(b)(1).  The parties do not dispute that common-

law claims of negligence and breach of contract may fall within the scope of this

provision in certain circumstances.  *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281

(2014) (holding that "state common-law rules fall comfortably within the language of the

ADA pre-emption provision," because they have "the force and effect of law").[3]  Rather,

---

[3] In its brief, SkyWest acknowledges that contract claims generally are not preempted by the ADA.  *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). Nevertheless, SkyWest argues, the ADA "may preempt any state-supplied common law rule which attaches additional terms to a contract, such as an implied covenant of good faith and fair dealing or punitive damages."  Appellee's Br. at 17 n.12. Day

the parties simply dispute whether Day's claims in this case are impermissibly "related to" an air carrier's "service."

Although this court has not directly defined what activities fall within the scope of the word "service," we have cited favorably to the Fifth Circuit's determination that "service" includes "'items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.'" *Arapahoe Cnty. Pub. Airport Auth. v. FAA*, 242 F.3d 1213, 1222 (10th Cir. 2001) (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995) (en banc)). Because the parties both assume that this definition governs the issues before this court, we likewise assume for purposes of this appeal that the *Hodges* definition applies, meaning that an airline's "provision of food and drink" constitutes a "service" for purposes of the ADA's preemption provision.

We turn then to the definition of "related to." The Supreme Court has held that this phrase is subject to the same interpretation as the virtually identical phrase "relate to" in the preemption provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a). *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). Although the Court has noted that these words "express a broad pre-emptive purpose," *id.*, it has warned against interpreting this phrase with "'uncritical literalism,'"

---

does not dispute this argument, nor does she contend her contract claim involves no implied duties or other common-law rules and thus escapes preemption under this standard. We therefore assume for purposes of this appeal that Day's contract claim, like her negligence claim, will be preempted under the ADA if we find it to be "related to" an airline "service."

as an overly literal interpretation of this broad and indeterminate phrase would mean that "'for all practical purposes pre-emption would never run its course,'" *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016) (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 656 (1995)).  *See also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256, 260 (2013) (holding that "the breadth of the words 'related to' does not mean the sky is the limit" in rejecting a defendant's preemption argument under a statute that "[b]orrow[s] from the ADA's preemption clause").  To set limits on this phrase, the Court has held that a "state law relates to an ERISA plan if it has a connection with or reference to such a plan," *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474, 479 (2020) (quotation omitted), and the Court has "adopt[ed] the same standard" for the ADA, which therefore preempts "[s]tate enforcement actions having a connection with, or reference to, airline 'rates, routes, or services.'"[4]  *Morales*, 504 U.S. at 384.

As this test was originally developed in the ERISA context, it was intended to provide a "workable standard[]" to "ensure that ERISA's express pre-emption clause receives the broad scope Congress intended while avoiding the clause's susceptibility to limitless application." *Gobeille*, 577 U.S. at 319–20.  The Court's ERISA jurisprudence clarifies how this test should be applied.  *Cf. Morales*, 504 U.S. at 384–87 (rejecting

---

[4] The ADA originally referred to "rates, routes, or services," but Congress amended this statutory language in 1994 to refer to "a price, route, or service." "Because Congress intended this amendment to be without substantive change, courts refer to the two versions interchangeably." *Ventress v. Japan Airlines*, 603 F.3d 676, 681 n.2 (9th Cir. 2010) (quotations and citation omitted).

contention that the Court could not "use [its] interpretation of identical language in ERISA as a guide," and relying on ERISA cases to resolve arguments regarding preemption under the ADA). In the ERISA context, a state law bears an impermissible "reference to" ERISA only if (1) "a State's law acts immediately and exclusively upon ERISA plans" or (2) "the existence of ERISA plans is essential to the law's operation." *Gobeille*, 577 U.S. at 319–20 (quotations omitted). "A law that does not refer to ERISA plans may yet be pre-empted if it has a 'connection with' ERISA plans." *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.*, 519 U.S. 316, 325 (1997). Specifically, a state law may have an impermissible "connection with" ERISA if (1) it "governs a central matter of plan administration," (2) it "interferes with nationally uniform plan administration," or (3) "acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." *Gobeille*, 577 U.S. at 320 (quotations and alterations omitted). "Pre-emption does not occur, however, if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans, as is the case with many laws of general applicability." *Dist. of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 n.1 (1992) (citation omitted). To determine whether a "forbidden connection" exists, the Supreme Court considers the federal statute's objectives "'as a guide to the scope of the state law that Congress understood would survive,'" as well as "the nature of the effect of the state law" on the subject matter of the federal statute. *Dillingham*, 519 U.S. at 325 (quoting *Travelers*, 514 U.S. at 656).

Accordingly, in applying the Supreme Court's "connection with or reference to" test in the ADA context, a state law has an impermissible "reference to" airline prices, routes, or services if the law "acts immediately and exclusively" upon airline prices, routes, or services, or if "the existence of" airline prices, routes, or services "is essential to the law's operations." *Gobeille*, 577 U.S. at 319–20. A state law that does not "refer to" airline prices, routes, or services under this test may nevertheless be preempted as impermissibly "connected with" them if the law (1) governs a central matter of an airline's prices, routes, or services; (2) interferes with uniform national policies regarding airline prices, routes, or services; or (3) will have acute economic effects that effectively limit airlines' choices regarding their prices, routes, and services. *See id.* at 320. In applying this test, a state law is not preempted if it "has only a 'tenuous, remote, or peripheral' connection with [airline prices, routes, or services], as is the case with many laws of general applicability." *Greater Wash. Bd.*, 506 U.S. at 130 n.1 (quoting *Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)); *see also Morales*, 504 U.S. at 390 ("To adapt to this case our language in *Shaw*, '[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." (quoting *Shaw*, 463 U.S. at 100 n.21) (alterations in original)). In evaluating a state law for the existence of a "forbidden connection," we will consider (1) "the objectives of the [ADA] as a guide to the scope of the state law that Congress understood would survive," and (2) "the nature of the effect of the state law on" airline prices, routes, and services. *Dillingham*, 519 U.S. at 325.

Applying this test to Day's negligence and contract claims, we conclude they are not preempted under the "reference to" part of the test because the state laws invoked by Day do not refer to airline prices, routes, or services. Rather, Utah's common-law negligence and contract causes of action are laws of general applicability that apply to any individuals or corporations whose actions may foreseeably injure others or who enter into contractual arrangements. *See Summerill v. Shipley*, 890 P.2d 1042, 1043, 1045 (Utah Ct. App. 1995) (holding that a defendant is liable for negligence if he fails to meet "the general standard of care," which requires "[a] person . . . to use reasonable care to avoid injuring other people or property"); *BR ex rel. Jeffs v. West*, 275 P.3d 228, 232 (Utah 2012) ("[A] special relationship is not typically required to sustain a duty of care to those who could foreseeably be injured by the defendant's affirmative acts."); *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230-31 (Utah 2014) ("The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." (quotation omitted)). These laws make no "reference to" airline prices, routes, or services because they do not act immediately and exclusively upon airline prices, routes, or services, nor do they depend on the existence of airline prices, routes, or services for their operation. *See Gobeille*, 577 U.S. at 319–20; *cf. Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990) (holding that a Texas cause of action was preempted by ERISA because the state courts had defined the cause of action to expressly refer to ERISA plans, such that "a plaintiff must plead, and the court must find, that an ERISA plan exists" for the plaintiff to prevail on this cause of action).

Turning then to the question whether Utah's negligence and contract laws have a forbidden "connection with" airline prices, routes, and services, we first evaluate the broader principles the Supreme Court has indicated should guide this inquiry. In this regard, we first consider (1) the objectives of the ADA, which provide "a guide to the scope of the state law that Congress understood would survive," and (2) "the nature of the effect of the state law on" airline prices, routes, and services. *Dillingham*, 519 U.S. at 325.

On the first consideration, we agree with our sister circuits that Congress enacted the ADA to achieve "the *economic* deregulation of the airline industry," but "[n]othing in the Act itself, or its legislative history, indicates that Congress had a clear and manifest purpose to displace state tort law in actions that do not affect deregulation in more than a peripheral manner." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265 (9th Cir. 1998) (en banc) (emphasis added) (quotations omitted); *see also Hodges*, 44 F.3d at 338 ("Significantly, too, neither the ADA nor its legislative history indicates that Congress intended to displace the application of state tort law to personal physical injury inflicted by aircraft operations, or that Congress even considered such preemption."); *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998) ("[T]he proper inquiry is whether a common law tort remedy frustrates deregulation by interfering with competition through public utility-style regulation. . . . We consider it highly unlikely that claims caused by careening service carts and plummeting luggage were to be removed from state adjudication."); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1258–59 (11th Cir. 2003) (explaining that competition between airlines is the primary concern

11

underlying the ADA and, accordingly, both employment discrimination actions and state-law personal-injury actions have typically been held to fall outside the scope of the ADA's preemption clause).  Congress's silence regarding the ADA's potential displacement of state tort laws "'takes on added significance in light of Congress's failure to provide any federal remedy for persons injured by such conduct,'" because it "'is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct.'"  *Hodges*, 44 F.3d at 338 (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984)).  Moreover, despite the lack of a federal remedy, Congress specifically requires air carriers to carry insurance "sufficient to pay . . . for bodily injury to, or death of, an individual or for loss of, or damage to, property of others, resulting from the operation or maintenance of the aircraft."  49 U.S.C. § 41112(a).  "A complete preemption of state law in this area would have rendered any requirement of insurance coverage nugatory," and thus this provision "can only be understood to qualify the scope of 'services' removed from state regulation" by the ADA's preemption provision.  *Hodges*, 44 F.3d at 338; *see also Taj Mahal*, 164 F.3d at 194 ("[T]he continued existence of statutorily mandated liability insurance coverage is strong evidence that Congress did not intend to preempt state tort claims."); *Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining that "one of the most basic interpretive canons" holds "that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (quotations and alterations omitted)).  Thus, the statute as a whole "evidences congressional intent to prohibit states from regulating the airlines while preserving state

12

tort remedies that already existed at common law, providing that such remedies do not significantly impact federal deregulation." *Charas*, 160 F.3d at 1265.

As for the second consideration that *Dillingham* directs us to consider—"the nature of the effect of the state law on" airline prices, routes, and services, 519 U.S. at 325—a judgment in Day's favor on her negligence and contract claims would impact SkyWest's prices, routes, and services only insofar as SkyWest might be required to exercise more care in providing whatever services it decides to provide.[5] *Cf. Harris v. Am. Airlines, Inc.,* 55 F.3d 1472, 1478 (9th Cir. 1995) (Norris, J., dissenting) (reasoning that negligence and other personal-injury claims based on an airline's repeated provision of alcoholic beverages to a drunk and abusive passenger should not be preempted under the ADA because an award of damages "would not regulate the economic or contractual aspects of the airline's provision of beverages," even if it might "affect the airline's training or security practices"); *see also Charas*, 160 F.3d at 1263 (en banc overruling of

---

[5] SkyWest suggests its prices, routes, and services could also be affected by the economic impact of a damages award in Day's favor, but the cases SkyWest cites to support this argument are inapposite, and SkyWest does not explain how a damages award would have a forbidden effect on its prices, routes, or services. Even if SkyWest's fares or services could arguably be affected by the financial losses it might experience as a result of a verdict in Day's favor, this would not in itself support the conclusion that Day's claims have an impermissible connection to SkyWest's prices, routes, or services. Any award of damages in any context may alter the airline's financial situation and thus indirectly impact the airline's prices, routes, and services, but an award of damages in and of itself will "affect airline fares in too tenuous, remote, or peripheral a manner to have pre-emptive effect." *Morales*, 504 U.S. at 390 (quotations and alterations omitted); *cf. Wolens*, 513 U.S. at 224–26 (allowing class-action plaintiffs to pursue contract claims for monetary relief against airline). The types of effects we are concerned with here are the acute effects of a finding of liability based on a particular cause of action, not the peripheral economic effects that may flow from a financial loss caused by an award of monetary damages.

*Harris*) (holding that "Judge Norris . . . got it right" and the majority in *Harris* erred in finding personal-injury claims preempted by the ADA). This is not the type of "public utility-style regulation" that Congress intended the ADA to preempt. *Taj Mahal*, 164 F.3d at 194. Rather, Utah's negligence and contract causes of action are akin to "generally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, [which] are not preempted, even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 646 (9th Cir. 2014). Finding SkyWest liable for its allegedly negligent infliction of personal injuries on Day during its beverage service would not force SkyWest to remove, add, or modify any of its prices, routes, or services; it would simply hold SkyWest to the same general obligations of due care and contractual fealty that apply to other companies.[6]

---

[6] Because the parties do not squarely address this issue, we do not address the question whether SkyWest might be subject to a heightened duty of care as a common carrier, nor do we address whether applying this heightened duty of care to SkyWest might trigger different ADA preemption concerns. *See Lamb v. B&B Amusements Corp.*, 869 P.2d 926, 930 (Utah 1993) ("The heightened standard of care required of common carriers is predicated on the principle that persons using ordinary transportation devices, such as elevators and buses, normally expect to be carried safely, securely, and without incident to their destination." (quotations and alterations omitted)). Even if a defendant is not subject to this heightened duty of care, it must exercise "care according to the nature of the circumstances that a reasonably prudent person would consider in assessing possible risks of injury," *id.*, and holding SkyWest liable for a breach of this generally applicable standard of care in the context of this personal-injury case would not impose a public-utility-style regulation on SkyWest's economic decisions. Thus, SkyWest has not met its burden of establishing that Day's negligence claim is expressly preempted by the ADA.

Accordingly, we are entirely unpersuaded by SkyWest's argument that Congress intended for airlines' careless infliction of personal injuries on passengers to be governed solely by "the whims of competitive market forces." Appellee's Br. at 25. Although Congress intended to deregulate airlines' economic policies (such as, for instance, the decision not to offer a beverage service or to offer a different range of beverages than other airlines), nothing in the ADA or its legislative history supports the view that Congress also intended to immunize airlines from liability for any violations of generally applicable negligence or contract laws.[7] As Justice Stevens reasoned in his partial concurrence in *American Airlines v. Wolens*, both "the standard of ordinary care" and contract principles are "general background rule[s] against which all individuals order their affairs," and "[s]urely Congress did not intend to give airlines free rein to commit negligent acts subject only to the supervision of the Department of Transportation, any more than it meant to allow airlines to breach contracts with impunity." 513 U.S. 219, 236–37 (1995) (Stevens, J., concurring in part and dissenting in part); *see also id.* at 231 n.7 (majority op.) (noting without discussion that both American Airlines and the United

---

[7] *See Harris*, 55 F.3d at 1478 (Norris, J., dissenting) ("Since economic deregulation is the key to the ADA, . . . beverage 'services' preempted under the ADA are limited to economic decisions regarding the provision of drinks, e.g., whether or not to provide drinks on any flight, and contractual decisions about whether to charge for the drinks or provide them free. If Ms. Harris were ultimately to recover damages in this case, the judgment . . . would not regulate the economic or contractual aspects of the airline's provision of beverages." (citation omitted)); *Charas*, 160 F.3d at 1266 ("We conclude that when Congress enacted federal economic deregulation of the airlines, it intended to insulate the industry from possible state economic regulation as well . . . . It did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct.").

States as amicus curiae had agreed that the ADA was unlikely to preempt safety-related personal-injury claims); *id.* at 242 (O'Connor, J., concurring in part and dissenting in part) (concluding that the non-personal-injury claims before the Court in *Wolens* should be preempted, but agreeing that personal-injury claims against airlines may not be preempted by the ADA). "Unsurprisingly, airlines do not compete on the basis of likelihood of personal injury, i.e., onboard safety, and as such it does not undermine the pro-competitive purpose of the ADA, as set forth in *Wolens*, to permit states to regulate this aspect of air carrier operations." *Branche*, 342 F.3d at 1258 (citation omitted).

In light of these considerations, we conclude that Day's contract and negligence claims are not based on state laws impermissibly "connected with" airline prices, routes, or services because Utah's contract and negligence laws (at least as applied in this case) do not govern a central matter of an airline's prices, routes, or services; do not interfere with uniform national policies regarding airline prices, routes, or services; and will not cause acute economic consequences that would effectively limit airlines' choices regarding their prices, routes, and services. *See Gobeille*, 577 U.S. at 320.

Specifically, for the reasons explained above, a finding in Day's favor would not govern any central matters of SkyWest's services, but would only require SkyWest, like all other businesses, to honor its contractual obligations and to comply with the general duty of care toward those who might be foreseeably injured by its affirmative acts. *BR*, 275 P.3d at 232; *Summerill*, 890 P.2d at 1043, 1045; *Am. W. Bank*, 342 P.3d at 230-31; *Wolens*, 513 U.S. at 236–37 (Stevens, J., concurring in part and dissenting in part).

16

Furthermore, SkyWest does not point to any uniform national policies that would be impeded by the requirements under Utah law for SkyWest to comply with its contractual commitments and to exercise reasonable care in undertaking activities that might foreseeably cause physical injuries to passengers. Although SkyWest asserts that different states have different standards of care, it does not cite to a single case to support this proposition as a reason for preemption, nor does it otherwise provide any basis for this court to conclude that a finding in Day's favor would interfere with "nationally uniform" policies regarding airline prices, routes, or services. *See Rockwell Int'l*, 618 F.3d at 1143 ("Because Defendants advocate preemption, they bear the burden of showing that federal and state law conflict."); *see also Wolens*, 513 U.S. at 236–37 (Stevens, J., concurring in part and dissenting in part) (reasoning without citing to any specific state laws that both "contract law" and "the standard of ordinary care" are "general background rule[s] against which all individuals order their affairs").

Finally, SkyWest has failed to show that a verdict in Day's favor could cause acute economic effects that would effectively limit SkyWest's choices regarding its prices, routes, and services. *See Gobeille*, 577 U.S. at 320. A damages award in Day's favor might incentivize SkyWest to put more effort into training its employees to avoid injuring passengers, but it would not constrain SkyWest's ability to make "economic decisions regarding the provision of drinks, e.g., whether or not to provide drinks on any flight, and contractual decisions about whether to charge for the drinks or provide them free." *Harris*, 55 F.3d at 1478 (Norris, J., dissenting); *cf. Tobin v. Fed. Express Corp.*, 775 F.3d 448, 456 (1st Cir. 2014) (holding that the ADA preempted tort claims that

17

"could effect fundamental changes in the carrier's current or future service offerings" by "regulat[ing] how [the air carrier] operates its core business," but contrasting such claims to "everyday personal injury claims" which "may not impose any greater duty on an airline than that which exists for any other firm").[8] Thus, any tangential effect that Day's

---

[8] We note that SkyWest's brief fails to cite to a single case in which a personal-injury claim was held to be preempted by the ADA. Day does identify two such cases in her reply brief, *Fawemimo v. Am. Airlines, Inc.*, 751 F. App'x 16 (2d Cir. 2018), and *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380 (5th Cir. 2004), but she points out that these cases involved very different facts than those at issue in this case. In particular, the alleged personal injuries in both of those cases arose from unsafe design elements or from the inherent risks of air travel rather than from employees' failures to exercise due care in their conduct toward passengers. For instance, in *Fawemimo*, the plaintiff "alleged that she hit her head on a television monitor above her seat while boarding a[] flight and that her injuries were the result of an unsafe aircraft design." 751 F. App'x at 17. The Second Circuit held that this claim was preempted under the Fifth Circuit's *Hodges* analysis because, "under *Hodges*, § 41713(b)(1) preempts claims that challenge airline policies and could potentially create inconsistent standards between states, while leaving room for personal injury actions that allege an airline was negligent in carrying out its policy." *Id.* The plaintiff's claim that the aircraft's design was inherently dangerous related to a general policy "rather than the negligent installation or maintenance of her specific monitor or seat," and the court therefore found it preempted based on *Hodges*. *Id.* The plaintiff in *Witty* likewise raised a claim based on general airline policies, alleging that he developed deep vein thrombosis because the aircraft's design did not provide adequate leg room and because the airline failed to warn its passengers of the inherent risk of deep vein thrombosis associated with air travel. 366 F.3d at 382. "[D]ecid[ing] this case narrowly by addressing the precise issues before [it]," the Fifth Circuit held that the ADA expressly preempted the plaintiff's leg-room claim because, unlike the claims in *Hodges*, this claim would have a significant economic effect on airlines' prices by reducing the number of passengers who could be carried on each flight. *Id.* at 383, 385. The court then held that the failure-to-warn claim was preempted "[u]nder the implied preemption doctrines of field preemption and conflict preemption." *Id.* at 384. The court noted that this holding was narrow, and it directly stated that it was not expressing an opinion as to whether a failure-to-warn claim might escape preemption under other circumstances. *Id.* at 385–86. Neither of these cases affects our conclusion that Day's negligence and contract claims are not expressly preempted by the ADA.

18

claims might have on SkyWest's beverage services or the airline's fares are "too far removed from Congress's deregulatory purpose to warrant preemption." *Dirty Boyz Sanitation Serv. Inc. v. City of Rawlins*, 889 F.3d 1189, 1200 (10th Cir. 2018). Allowing a damage award when a flight attendant carelessly injures a passenger with a beverage cart will "neither significantly determine what services [airlines] will provide nor require [airlines] to provide a service not available in the market." *Id.*

We therefore hold that the district court erred in dismissing Day's negligence and contract claims as preempted by the ADA.

**B. Alternative Arguments for Affirmance**

SkyWest asks us to affirm the district court's decision on two alternative grounds. Specifically, SkyWest argues that (1) Day's contract and negligence claims are subject to implied field preemption under the Federal Aviation Act of 1958, and (2) Day's contract claim fails to state a claim upon which relief may be granted, both because her complaint did not adequately identify a relevant contract or contractual duty, and because the contract claim is duplicative of the negligence claim.

SkyWest did not raise a field-preemption argument below and devotes little space to this issue in its appellate briefing, even though preemption is a "somewhat Byzantine area of the law," *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012), requiring a detailed evaluation of both state and federal law, *see, e.g.*, *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1325–29 (10th Cir. 2010) (conducting a lengthy multi-step analysis to determine whether a specific state law was field preempted by the Federal Aviation Act). We decline to exercise our discretion to

19

consider this newly raised, inadequately briefed, and analytically complex issue in the first instance on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."); *Dutcher v. Matheson*, 733 F.3d 980, 989 (10th Cir. 2013) ("While the parties complied with our instruction to address Class Action Fairness Act jurisdiction in supplemental briefing, we do not believe it appropriate to resolve this thorny question without further development in the district court."); *United States v. Lamirand*, 669 F.3d 1091, 1098 n.7 (10th Cir. 2012) ("Given the apparent complexity of this issue of statutory interpretation . . . , we are reluctant to definitively opine on its merits without a full adversarial framing of the relevant considerations."). We express no opinion as to either the merits of this defense or the threshold procedural question whether SkyWest may raise this new affirmative defense on remand.

SkyWest's second alternative argument for relief is directed at the contract claim and is premised on two independent grounds: (1) the adequacy of the allegations in Day's complaint, and (2) Utah law regarding overlapping contract and tort claims.

In support of the first of these grounds, SkyWest argued in its motion to dismiss that the complaint failed to adequately plead a claim for breach of contract because it did not establish the existence of a particular contract or identify a specific contractual provision breached by SkyWest, and any implied contractual duties were necessarily preempted. In granting SkyWest's motion to dismiss on the basis of preemption, the district court stated in dicta that "SkyWest is correct that the factual allegations of Day's

complaint are insufficient to state a claim for breach of contract," App. at 136 n.13, but it did not elaborate on this comment.

On appeal, SkyWest addresses this matter on just one page of its appellate brief, in which it fails to cite to a single case or discuss a single legal principle. *See* Fed. R. App. P. 28(a)(8); 28(b) (directing appellees to include in their briefs their "contentions and the reasons for them, with citations to the authorities . . . on which the appell[ee] relies"). Without identifying or discussing the controlling legal standards that govern our review of the adequacy of a complaint, SkyWest simply asserts that Day's broad allegations regarding the existence of a contract and the duties of safe carriage and safe conduct are inadequate to plead the existence of a specific contract or of any specific contractual obligations. *Cf. Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) ("A complaint will survive dismissal only if it alleges a plausible claim for relief—that is, the factual allegations must be enough to raise a right to relief above the speculative level. Even so, granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." (quotations, alterations, and citations omitted)). SkyWest does not address whether Day's breach-of-contract claim might plausibly be premised on implied contractual duties, which SkyWest incorrectly argued below were necessarily preempted by the ADA. Moreover, SkyWest makes the cursory assertion that this court can affirm the dismissal of Day's complaint based on a document SkyWest attached to its motion to dismiss, without recognizing that "consideration of material attached to a defendant's answer or motion to dismiss" generally "requires the court to convert the

21

motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

"Deprived of meaningful adversarial briefing regarding this [argument], as well as a reasoned district court decision resolving it, we believe that the most prudent and fair course is to allow the district court to address this [argument] in the first instance on remand . . . ." *Sylvia v. Wisler*, 875 F.3d 1307, 1326 (10th Cir. 2017); *see also Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 846 (10th Cir. 1993) ("[W]e do not understand what the district court meant, nor do we have the benefit of the district court analysis beyond its mere conclusion that the merger doctrine is not applicable. Accordingly, we must remand for further analysis of this element as well.").

Finally, SkyWest argues that we can affirm the dismissal of Day's contract claim because it is duplicative of her tort claim. The district court declined to address this issue, which requires a determination of whether and how various Utah Supreme Court cases cited by the parties might apply when a plaintiff pleads both contract and tort causes of actions. The parties briefed this issue on appeal, but only in a few pages of each of their respective briefs. "Rather than examining and resolving the merits of the[ir] contentions, . . . we adopt the better practice of leaving the matter to the district court in the first instance." *Evers v. Regents of Univ. of Colo.*, 509 F.3d 1304, 1310 (10th Cir. 2007); *see also Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1527 (10th Cir. 1992) ("Although the parties have briefed the legal issue of qualified immunity on appeal, we decline to address the issue without the benefit of the district court's thoughts on the issue."); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1238 (10th

Cir. 2005) ("Where an issue has been raised, but not ruled on, proper judicial administration generally favors remand for the district court to examine the issue initially.").

## IV.  CONCLUSION

For the reasons set out above, we **REVERSE** the district court's dismissal of Day's claims and **REMAND** this matter to the district court for further proceedings consistent with this opinion.