NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0064n.06

No. 22-1410

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

HEADSTREAM TECHNOLOGIES, LLC,

    Plaintiff-Appellant,

v.

FEDEX CORPORATION,

    Defendant,

FEDEX EXPRESS, jointly and severally,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Feb 01, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: STRANCH, MURPHY, and DAVIS, Circuit Judges.

STRANCH, J., delivered the opinion of the court in which DAVIS, J., joined in full. MURPHY, J. (pp. 11–14), delivered a separate opinion concurring in part and in the judgment.

**JANE B. STRANCH, Circuit Judge.** This case concerns Plaintiff Headstream Technologies, LLC's common law claims of fraud and tortious interference with prospective economic advantage, and its alternative claim for breach of contract, against Defendant FedEx Express. Headstream brought these claims when its bid in response to a request for proposals, submitted to FedEx for delivery, was not received until after the deadline for consideration had passed. FedEx moved for summary judgment, arguing that Headstream's common law claims were preempted by the Airline Deregulation Act, that its breach of contract claim was untimely, and that FedEx's liability was limited to $100 based on the contract of carriage. The district court granted FedEx's motion; Headstream appealed. For the reasons that follow, we **AFFIRM**.

## I.   BACKGROUND

In early 2018, the Norfolk Public School System of Norfolk, Virginia, issued a request for proposals (RFP) for a system to track teachers' professional development and credentials. Bidders' proposals were due by 1:00 p.m. on March 28, 2018. Headstream (whose parent company is a Michigan corporation) sought to submit a proposal.

On March 27, 2018, a Headstream employee took a digital copy of the company's proposal to a business called Kopy Korner for printing and overnight delivery. Headstream paid Kopy Korner to print the documents and ship them via FedEx Express, to be delivered to the Norfolk Public School System by 8:00 a.m. the next day, March 28, 2018. Headstream did not declare a value on the shipment, and asserts that "at no point" was its employee presented with a written contract to review or sign. After Headstream paid for the shipment, however, the employee was handed a receipt to which the shipping label was stapled.

The shipping label noted that its use constituted the shipper's "agreement to the service conditions in the current FedEx Service Guide," and that FedEx's liability for "any loss," including lost profits, was "limited to the greater of $100 or the authorized declared value." In March 2018, the operative FedEx Service Guide confirmed that, "[w]ith respect to U.S. Express package services, unless a higher value is declared and paid for, [FedEx's] liability for each package is limited to $100." The Guide explained that FedEx would "[i]n no event" be liable for "any special, incidental or consequential damages, including . . . loss of profits," whether or not FedEx knew such damages might be incurred. The Guide also stated that any right to equitable or legal relief based on any cause of action arising from FedEx's transportation of a package would be "extinguished" unless the shipper filed the action within one year "from the date of delivery of the shipment or from the date on which the shipment should have been delivered."

At approximately 10:14 a.m. on March 28, 2018, the package was marked as signed for in Room 1008 of the Norfolk Public School System building by a "J. Pruiett." No one by that name worked for Norfolk Public Schools at the time.

The next day, Headstream received an email from Michael Sinnott, the Norfolk Public Schools employee in charge of the bid process, informing the company that its proposal had arrived at 9:00 a.m. on March 29, 2018, and could not be considered because it was not received by the deadline. Sinnott had unsuccessfully checked both the mailroom and Room 1008 for the package the previous day. According to FedEx, in the investigation that followed, Sinnott learned that a Norfolk Public Schools employee had found Headstream's package in the mailroom sometime after 1:30 p.m. on March 28, 2018, and that a person from another office in the building had brought the package to the mailroom at some point that morning. During the investigation, FedEx maintained to Headstream that the package had been delivered to Room 1008 of the Norfolk Public School System building at 10:14 a.m. on March 28, 2018, but told Sinnott that, based on GPS data, the courier was "a couple blocks away" from the building at that time. Per FedEx, the GPS address captures around this time were inaccurate due to the variable quality of the satellite signals used to establish the GPS location.

On March 27, 2020, Headstream sued FedEx, claiming diversity jurisdiction and alleging that (1) FedEx committed common law fraud when it represented that the company's proposal had been timely delivered on March 28, 2018, to "J. Pruiett," (2) FedEx committed tortious interference with Headstream's prospective economic advantage when it "willfully" failed to deliver Headstream's proposal to the Norfolk Public School System, and (3) in the alternative, FedEx breached its contract with Headstream to deliver the proposal by March 28, 2018, causing Headstream to incur consequential damages. At summary judgment, the district court determined

that Headstream's common law claims were preempted by the Airline Deregulation Act, that its breach of contract claim was untimely, and that FedEx's liability was limited to $100 based on the contract of carriage. Headstream timely appealed.

## II.    ANALYSIS

We review the district court's grant of summary judgment de novo, making all reasonable inferences in favor of the non-moving party.[1] *SunAmerica Hous. Fund 1050 v. Pathway of Pontiac, Inc.*, 33 F.4th 872, 878 (6th Cir. 2022).

### A.    Headstream's Common Law Claims

The Airline Deregulation Act (ADA, or the Act) was enacted in 1978 to promote "efficiency, innovation, and low prices" in the airline industry. 49 U.S.C. § 40101(a)(12)(A). "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision[.]" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378-79 (1992). In its current form, the provision prohibits states from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b). The parties do not dispute that FedEx is an air carrier subject to the ADA.

The preemption clause's causation requirement is broadly construed. *See Morales*, 504 U.S. at 383-84; *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995) (noting that *Morales* defined the predecessor to the ADA preemption clause's "related to" language as "having a connection with, or reference to," air carrier prices, routes, or services). That said, some claims may affect air

---

[1] Here we have for review "only the transcript of the summary judgment hearing" to ascertain the district court's reasoning. *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 617 (6th Cir. 2001). Such motions are "inherently fact-intensive," and both appellate review and the parties themselves would be aided by "a written opinion explaining its ruling and the reasoning, factual and legal, in support, especially when the ruling disposes of the case in a final judgment." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 806 (6th Cir. 2020) (quoting *Peck*, 237 F.3d at 617).

carrier pricing or service in a manner "too tenuous, remote, or peripheral" for preemption to apply. *Morales*, 504 U.S. at 390 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)); *see Day v. SkyWest Airlines*, 45 F.4th 1181, 1185-86 (10th Cir. 2022).

At issue, then, is whether Headstream's common law claims are sufficiently "related to" a service of FedEx to merit ADA preemption. As our concurring colleague articulates, courts have struggled to determine when a claim's connection to carrier services is sufficiently strong to merit preemption, and when it is not. We agree that the dividing line, insofar as it exists, has not been clearly drawn. But we need not establish a definitive taxonomy of ADA preemption to resolve this case.

Headstream compares the events at issue to the racial discrimination, intentional infliction of emotional distress, fraud, and misrepresentation that was alleged in *Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493 (6th Cir. 1999). "Just as discriminatory acts do not further an air carrier's service," neither do the intentional and deliberate misrepresentations FedEx purportedly made regarding the delivery of the proposal. In sum, Headstream argues, its intentional tort claims are too tenuously connected to FedEx's services for preemption to apply.

Headstream also points to *Rombom v. United Airlines, Inc.*, 867 F. Supp. 214 (S.D.N.Y. 1994) (Sotomayor, J.), which held that ADA preemption did not bar a plaintiff's tort claim based on her arrest when she was escorted off an airplane. *Id.* at 224. The court articulated a three-part test to determine whether preemption was warranted: Was the activity at issue an air carrier service? If so, did the plaintiff's claims affect said service directly or "tenuously, remotely, or peripherally"? And if the claims had more than an "incidental" effect on the service, was the carrier's underlying tortious conduct reasonably necessary to the provision of the service? *Id.* at 221-22. This analysis was guided by the understanding that the ADA preemption provision

"cannot be construed in a manner that insulates air carriers from tort liability for injuries caused by outrageous conduct that goes beyond the scope of normal aircraft operations." *Id.* at 222.

The *Rombom* court concluded that the "essence" of the plaintiff's claims arising from her arrest was that "the air carrier abused its authority to provide a given service," and because "the flight crew's decision to have Rombom arrested was allegedly motivated by spite or some unlawful purpose, Rombom's subsequent tort claims arising out of this decision [were] at best tenuously related to an airline service." *Id.* at 224. And, taking the facts as alleged in the complaint, Rombom's arrest was also not necessary to promote safety; it therefore failed the third prong of the preemption inquiry. *Id.*

Headstream claims that the *Rombom* plaintiff's arrest is "similar" to FedEx's "intentional conduct in forging the signature" of the person who received the proposal "at an office which FedEx did not visit, at a time when FedEx demonstrably made no delivery, in order to send a fake confirmation to Headstream." According to Headstream, FedEx's "intentional misrepresentations" had only an "incidental effect" on FedEx's services and constituted the kind of unreasonable or outrageous conduct that should survive a preemption analysis (*i.e.*, satisfy both the second and third prongs of the *Rombom* inquiry).

Like our sister circuit, we find *Rombom* instructive in resolving the matter at hand and apply it here. *See Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998) (citing *Rombom*). At issue under this test is whether FedEx's delivery of the proposal to the Norfolk Public School System building and subsequent verification thereof is within the scope of FedEx's service. As a majority of our sister circuits has held, the term "service" as used in the ADA refers to the "bargained-for or anticipated provision of labor from one party to another." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995); *see Watson v. Air Methods Corp.*, 870 F.3d 812,

817-18 (8th Cir. 2017); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (per curiam) (collecting cases).

"Stripped of rhetorical flourishes," Headstream's common law claims are "about FedEx's package handling . . . and delivery procedures." *Tobin v. Fed. Exp. Corp.*, 775 F.3d 448, 454 (1st Cir. 2014). Any attempt on appeal to draw a line between FedEx's alleged misrepresentation about the proposal's delivery and the delivery itself is belied by the position Headstream took at oral argument before the district court:

> THE COURT: [W]ould you agree that the common law claims all are reliant on the fact that somehow FedEx mishandled this particular package?
>
> HEADSTREAM COUNSEL: Yes.

R. 71, Mot. for Summ. J. Hr'g Tr., PageID 702. A misrepresentation about a misdelivered package, moreover, is not equivalent to an airline passenger's assault or employee's experience with racial discrimination. *Cf. Wellons*, 165 F.3d at 496; *Hammond v. Nw. Airlines*, No. 09-12331, 2009 WL 4166361, at *4-5 (E.D. Mich. Nov. 25, 2009). And Headstream provides no evidence that FedEx abused its authority in delivering the proposal. Even if the FedEx courier falsely represented that the package was delivered to the right room in the building or entered an incorrect name into the delivery tracker, no evidence suggests that FedEx's conduct was intentional, let alone so intentionally malicious as to be outrageous or outside the scope of FedEx's operations. In short, the activity at issue here was directly related to FedEx's services as an air carrier. "By using state common law as a blunt instrument to prescribe protocols for package . . . verification[] and delivery, the claims presented here would regulate how FedEx operates its core business." *Tobin*, 775 F.3d at 456. Thus, state common law claims like Headstream's "fall comfortably

within the language of the ADA pre-emption provision." *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281, 285 (2014).

Finally, Headstream argues that preemption of its common law claims would produce "a due process issue." But applying preemption here would create no due process concerns. Headstream does have a remedy for misdelivery of the proposal—in the contract of carriage. Headstream could have declared a value on the package or purchased third-party insurance coverage, both contemplated by the Service Guide. It simply chose not to. There is no serious physical injury here, or otherwise outrageous conduct such that the application of preemption could deprive a plaintiff of any remedy. *Cf. Rombom*, 867 F. Supp. at 221; *Day*, 45 F.4th at 1187-90. Headstream's common law claims are based on mishandling and misdelivery of the package—*i.e.*, FedEx's services—and they are preempted under the ADA.[2]

### B.   Headstream's Breach of Contract Claim

Headstream's breach of contract claim is based on an agreement the parties "voluntarily undertook" and so is not subject to ADA preemption. *Ginsberg*, 572 U.S. at 285; *see Wolens*, 513 U.S. at 229. FedEx argues, however, that the claim is untimely, and that, in any event, FedEx's liability is limited to $100 by the terms of the contract of carriage.

Before discussing the breach of contract claim's timeliness, we address Headstream's threshold argument that the contract of carriage does not apply. According to Headstream, it never agreed to abide by the terms listed on the package's shipping label (that is, the service conditions contained in the FedEx Service Guide). Rather, Headstream agreed only to pay FedEx in exchange

---

[2] We need not address the parties' squabble over the applicability of 14 C.F.R. § 205.5. Air carriers are required to file an insurance policy or self-insurance plan that is "sufficient to pay, not more than the amount of the insurance, . . . for loss of, or damage to, property of others, resulting from the operation or maintenance of the aircraft." 49 U.S.C. § 41112. FedEx states that it has done so.

for FedEx shipping its proposal by a certain time; it did not agree to the "additional" shipping label terms. Headstream argues that the terms of whatever contract did exist between the company and FedEx were ambiguous, and whether these "additional" shipping label terms were part of the contract was a question of contract formation and interpretation that should have been presented to a jury.

This argument is foreclosed by century-old precedent. *See Am. Ry. Express Co. v. Lindenburg*, 260 U.S. 584, 591 (1923) ("The respondent, by receiving and acting upon the receipt, although signed only by the petitioner, assented to its terms and the same thereby became the written agreement of the parties."). Headstream's employee received the receipt and attached shipping label, which expressly stated that its use constituted agreement to the service conditions in the FedEx Service Guide. Headstream received the terms set forth in the shipping label and was on notice of the terms in the Service Guide. That is enough to demonstrate that the contract of carriage, including the terms and conditions incorporated through the Service Guide, governs. *See S. Pac. Transp. Co. v. Com. Metals Co.*, 456 U.S. 336, 342 (1982); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 930-31 (5th Cir. 1997). *Cf. Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 792 n.1 (6th Cir. 2016).

The remaining question is whether Headstream's breach of contract claim is timely. Per the Service Guide, Headstream had one year from the date of delivery of the shipment or from the date on which the shipment should have been delivered to file any lawsuit against FedEx for loss or damage to its shipment. Headstream has provided no reason why this time limit should not be enforced. *See Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947) (a contractual provision may "validly limit" the statute of limitations so long as the limitation is "reasonable"); *Myers v. W.-S. Life Ins. Co.*, 849 F.2d 259, 260 (6th Cir. 1988) (Michigan law

agrees); *see also Blanco v. Fed. Express Corp.*, 741 F. App'x 587, 590 (10th Cir. 2018) (parties did not dispute that FedEx's one-year limitations period was enforceable). The proposal was to be delivered on March 28, 2018, and Headstream did not file its complaint until March 27, 2020, a year after its contractual statute of limitations had elapsed. Headstream's breach of contract claim was therefore untimely.

Applying the limitations on liability found on the shipping label and in the Service Guide, we also agree that FedEx's liability is limited to $100 because Headstream failed to declare a value on the package. *See Kemper Ins. Cos. v. Fed. Exp. Corp.*, 252 F.3d 509, 512-14 (1st Cir. 2001). And, although Headstream sought consequential damages, under the terms of the Service Guide, FedEx is not liable for any such damages, including lost profits, regardless of whether it knew such damages might be incurred. The district court did not commit error as to these two points.

## III.   CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

MURPHY, Circuit Judge, concurring in part and concurring in the judgment. My colleagues offer a thoughtful discussion about why the Airline Deregulation Act's preemption provision bars Headstream Technologies' two tort claims against FedEx Express. In my view, however, the provision's "unhelpful text" leaves its proper reach unclear. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). I thus find it easier to resolve part of this case by adopting FedEx's alternative argument: that Headstream's tort claims fail on their merits under Michigan law. I otherwise fully concur in my colleagues' separate conclusion that Headstream did not timely file its breach-of-contract claim.

The Airline Deregulation Act provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The Supreme Court has interpreted this language as having a broad reach because the key phrase "related to" covers any state law that merely "stand[s] in some relation" to or has a "connection with" an airline's prices, routes, or services. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992) (quoting *Black's Law Dictionary* 1158 (5th ed. 1979)). To adopt this broad reading, the Court relied on its cases interpreting a similar provision in the Employee Retirement Income Security Act (ERISA). *See id.* ERISA's preemption provision covers all state laws that "relate to any employee benefit plan." *Id.* at 383 (citation omitted). And the Court had held that this language preempts state laws that have "a connection with, or reference to, such a plan." *Id.* at 384 (citation omitted); *see also Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995).

Since *Morales*, the Court's ERISA cases have come to recognize that a literal reading of the elastic phrase "related to" could prohibit courts from applying nearly all state laws to employee welfare plans because, "as many a curbstone philosopher has observed, everything is related to

everything else." *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring); *see Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016); *Travelers*, 514 U.S. at 655. Finding that expansive result unpalatable, the Court has sought to develop "workable standards" tied to ERISA's overarching goals to determine when a state law has the forbidden connection to an employee welfare plan. *Gobeille*, 577 U.S. at 319.

Because the Airline Deregulation Act's preemption provision uses this "related to" phrase, it raises the same concerns. *See DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 86 (1st Cir. 2011). Read literally, it could wipe out nearly all state laws as applied to air carriers. The Court thus ended its *Morales* opinion by suggesting that some laws (such as those regulating gambling) could have "too tenuous, remote, or peripheral" of a connection to a carrier's rates, routes, or services to fall within the provision (even if the carrier offered in-cabin gambling). 504 U.S. at 390.

Yet how should courts distinguish a "regular" connection (subject to preemption) from a "tenuous" one (saved from preemption)? If a flight attendant negligently runs a drink cart into a passenger, may the passenger assert a negligence claim under a state's tort law? *Cf. Day v. SkyWest Airlines*, 45 F.4th 1181, 1182 (10th Cir. 2022); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 335 (5th Cir. 1995) (en banc). If an air carrier discriminates against a pilot on the basis of race, may the pilot assert a discrimination claim under a state's civil-rights laws? *Cf. Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493, 495–96 (6th Cir. 1999). Courts have held that the Act does not preempt these sorts of claims. *See Day*, 45 F.4th at 1190; *DiFiore*, 646 F.3d at 87 nn.6 & 8. How about if an air carrier negligently delivers a package to the wrong address, causing that different homeowner harm? *Cf. Tobin v. Fed. Exp. Corp.*, 775 F.3d 448, 449–50 (1st Cir. 2014). Or if the carrier commits fraud in its frequent-flyers program? *Cf. Wolens*, 513 U.S. at 224–25. Courts have found these claims preempted. *See id.* at 228; *Tobin*, 775 F.3d at 453–54.

I fail to understand the dividing line that these cases mean to establish. What in the Act's text or purposes distinguishes an airline customer's negligence claim for a personal injury from the customer's fraud claim for a property injury? In some respects, moreover, Headstream's claim is further removed from FedEx's air services than a non-preempted claim alleging a personal-injury tort on an airline. Headstream does not complain about the manner in which FedEx shipped its package *through the air*; it complains that FedEx lied about its driver's alleged failure to *walk the package* to the right room in a building. Does the Airline Deregulation Act's preemption provision cover an air carrier's non-air services? Or might a separate preemption provision for motor carriers apply? *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 367 (2008).

Given these difficult interpretive questions, I would resolve Headstream's claims on the merits. Headstream alleges that FedEx committed fraud by falsely claiming that it had delivered the package and that FedEx tortiously interfered with Headstream's prospective economic relationship with the Norfolk Public School System. Aside from its preemption analysis, FedEx argued in the district court that Headstream failed to present enough evidence for a reasonable jury to find all elements of either of these claims under Michigan law. And we may affirm a district court's decision on an alternative ground as long as the record supports that ground. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1014 (6th Cir. 2022). The record supports it here.

I start with Headstream's fraud claim. This claim required Headstream to prove, among other things, that a FedEx agent knowingly or recklessly made a false statement with the intent that Headstream would rely on the statement. *See, e.g.*, *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). As best as I can tell, Headstream alleges (1) that the FedEx tracking website displayed the FedEx driver's misrepresentation that he had delivered the package, (2) that Headstream relied on this false statement, and (3) that it would have arranged for an

-13-

alternative delivery if it had known about the lie. But the record contains insufficient evidence to show that FedEx knowingly or recklessly made a false statement. FedEx's tracking website showed that the driver had delivered a package in Norfolk, Virginia, at 10:14 a.m. on March 28, 2018, and that "J. Pruiett" had signed for this package. R.56-1, PageID 509. Yet there is no genuine dispute that the package *was* delivered to the school system's building on March 28. An employee of the school system found it in the mailroom sometime after the 1:00 p.m. deadline for delivery. R.55-3, PageID 416. Even if the driver delivered the package to the wrong room in the building, the website did not identify a specific room of delivery or otherwise provide any details whatsoever about the manner of delivery. So Headstream did not adequately establish a knowingly or recklessly false statement in FedEx's cursory communication before the 1:00 p.m. deadline.

Headstream's tortious-interference claim is even easier. This claim required Headstream to prove that FedEx had knowledge of its potential economic relationship with the Norfolk Public School System. *See Cedroni Assocs., Inc. v. Tomblinson, Harburn Assocs., Architects & Planners Inc.*, 821 N.W.2d 1, 3 (Mich. 2012). Yet, other than FedEx's delivery of a package to the school system, Headstream presented no evidence of this knowledge. Indeed, Headstream did not even respond to FedEx's lack-of-knowledge argument in the district court or on appeal. So it has forfeited (or potentially waived) any contrary contention. *See Bannister*, 49 F.4th at 1011–12. For these reasons, I concur in part and concur in the judgment.